FRANK ABELLA HERNÁNDEZ ET AL., Petitioners, v. SUPERIOR COURT OF PUERTO RICO, SAN JUAN PART, J. M. CALDERÓN, JR., JUDGE, Respondent.

No. CJ de T 64-4. Decided April 19, 1965.

*Dubón & Dubón* for petitioners. *E. Martínez Rivera* and *Edelmiro Martínez, Jr.,* for interveners María Saló and María del Carmen Seraballs Saló.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

This is an incident on execution of judgment. On July 3, 1964, María Saló and her minor daughter María del Carmen Seraballs Saló petitioned the San Juan Part of the Superior Court for execution of a judgment rendered in their favor in the sum of $105,000 and interest thereon,[1] and to that effect they moved the court to order the sale at public auction of the properties attached to secure the judgment, to wit: "all the assets, rights, shares, interest, participation, and title of defendant Frank Abella Hernández in the commercial partnership constituted under the name of 'Seraballs, Abella & Compañía' which operates under the industrial name of Santurce Soda Water." A writ of execution was issued on the same date.

On July 22, 1964, the court granted intervention to Rafael Padilla y Co. and to its managing partner Rafael Padilla, who moved to vacate the attachment and to stay the sale at public auction. They alleged that Seraballs, Abella y Compañía was at present Rafael Padilla y Co., and that its only partners with the character of administrators were Rafael Padilla and defendant Frank Abella Hernández; that that partnership had not been liquidated, and that if the sale at public auction ordered were carried out, the effect would be to substitute in the partnership a stranger in the place of partner Frank Abella Hernández without the consent of the other partner and intervener, Rafael Padilla. The parties having been heard on such contention, on August 17, 1964, the trial court denied intervention and refused to stay the auction.

The trial court was of the opinion that plaintiffs' right to collect the judgment by selling at public auction the rights and shares corresponding or which may correspond to debtor

---

[1] *Widow of Seraballs* v. *Abella Hernández*, 90 P.R.R. 360 (1964).

Frank Abella Hernández as partner of Seraballs, Abella y Compañía, at present called Rafael Padilla y Co., was not limited to the contingency of whether such partnership was dissolved or under liquidation; that § 268 of the Civil Code (1930 ed.) provides that the shares or interest in commercial companies or industries are considered as movables with respect to every member of the association during the time of its existence; and that according to §§ 1590 of the Civil Code and 137 of the Code of Commerce, "the private creditors of each partner may demand the attachment and sale at auction of the latter's share in the partnership capital"; and that, therefore, "it is clear that the share and title which defendant in this case has in the intervener partnership is subject to attachment and execution, and that in order to execute the judgment plaintiffs need not wait until the expiration of the term of duration of the company." The trial court also held that the fact that the purchaser at the auction sale could not join the partnership nor substitute himself in the place of defendant Abella Hernández was no ground for staying the sale, and that whoever acquired defendant's share or interest at the auction would take it subject to such limitation.

The auction sale was set for August 18, 1964. The edict contained a warning that the person obtaining the bid at the auction could not substitute himself in the place of defendant Abella for the discharge of the work under his charge in the management of the business of the partnership without the previous consent of the other partners, pursuant to the provisions of § 120 of the Code of Commerce and subject to the provisions of § 137 thereof.

On the date the trial court denied intervention, August 17, defendant Abella Hernández and interveners Rafael Padilla y Co. and Rafael Padilla filed a petition for certiorari addressed to the writer of this opinion as Judge

in Vacation in the summer term of 1964 to review said ruling. Since the auction sale was set for the following day, August 18, they prayed for an order maintaining the status quo. In support of his jurisdiction, on August 18 the Judge in Vacation stayed the auction set for that day. On August 21, 1964, he issued a writ of certiorari to review the proceedings. When the Judge in Vacation ceases without the petition having been perfected and decided, the petition goes to the Court.[2]

It is correct that according to § 268 of the Civil Code, 1930 ed., the shares or interest in a commercial company, industry, or any other speculation are considered as movables with respect to a member during the time of its existence. It is also correct that according to § 1590 of that Code the creditors of the partnership have preference over the creditors of each partner with regard to the partnership property, and, without prejudice to this right, the private creditors of each partner may demand "the attachment and sale at auction of the latter's share in the partnership capital."

 However, this case involves a commercial company, and the matter is governed by the particular applicable provisions of the Code of Commerce with preference over the provisions of the Civil Code. Section 120 of the Code of Commerce, 1932 ed., provides as follows under the title "Commercial Companies": "No partner can transfer to another person the interest he may have in the copartnership, nor can he substitute another person in his place for the discharge of the work under his charge in the management of the business of the partnership, without the previous consent of the other partners." In consonance with the spirit of that provision, the following § 137, under the subtitle relative to rights and obligations of the partners, provides that "As

---

[2] Even if the Judge in Vacation would have passed upon the matter, the ruling was in the last instance reviewable by the Court, at the request of a party. Act of March 1, 1902, as amended by Act No. 59 of 1931 (Sess. Laws, p. 404).

regards the partnership, the creditors of a partner sl., il
have no right, even in case of said partner's failure, oth.
than the right to attach and receive such sums as may pe.-
tain to the debtor partner by reason of profits or liquidation."
The provisions of this section, which is expressly applicable
in the case of a commercial partnership, bar at this time the
application made by the trial court of § 1590 of the Civil Code
which authorizes the creditor of a partner to demand the
attachment and auction of the former's *share* in the *partner-
ship capital.*

■ The difference of concept between the Civil Code
and the Code of Commerce may be explained by the very
nature of the commercial operations required, since the pe-
cuniary interests of the general public doing business, a
greater certainty and stability of the partnership capital are
involved. We must not overlook the fact that in commercial
partnerships the general partners are jointly liable with all
their property for the results of the transactions consum-
mated—Code of Commerce, §§ 104, 125, 1932 ed.—which is
not the case with the civil partnership.

Referring to § 137 of the Code of Commerce, 1932 ed.,
which is § 174 of the Compilation of 1911 and § 174 of the
Spanish Code of Commerce of 1886, Benito, Jr., in his work
*La Personalidad Jurídica de las Compañías y Sociedades
Mercantiles,* comments at p. 111:

"Where a partnership is organized for gainful purposes, the
partners contribute the properties which will form the partner-
ship capital. According to the personality doctrine, these proper-
ties must be absolutely separated from the property of each
partner and they may only be affected by the results of the
partnership operations. This is the purpose of the law, accord-
ing to which one who forms part of a civil or commercial part-
nership binds himself not to deprive it of the resources con-
tributed by him during such time as it shall last. A partner may
not, therefore, mortgage or alienate his share, *nor may his*

*private creditors dispose of it,* to which they have no more right than their debtor." (Italics ours.)

After referring to decisions of the Supreme Court of Spain on § 127 (§ 104, 1932 ed.) which, as is known, jointly binds the partners with all their property for the partnership operations, he says:

"Let us examine the justice of the two principles embodied in §§ 127 [104] and 174. The latter [174 (137)] is of such importance that without it the constitution of general or limited copartnerships would be impossible, for no one would run the risk that at any moment *the creditor* of a copartner may withdraw a part of the capital, thereby unquestionably jeopardizing the result of the other outstanding operations. However, this declaration is not due—as asserted by the Supreme Court—to the existence of personality of these partnerships. It is simply a warranty measure which serves as a basis of confidence to the constitution of the commercial partnership. And that this is evident is deduced from the exception established by that same section in favor of those constituted by shares to bearer (commercial form par excellence adopted by most partnerships insofar as the necessary percentage has been disbursed), such partnerships being precisely, as they are, those in which the personality has true life."[3] (Italics ours.)

See, also, the oft-cited *Judgment* of the Supreme Court of Spain of November 25, 1898, and the *Judgment* of July 12, 1883.

Professor González de Echávarri y Vivanco[4] says that "the only right which § 174 [137] grants to the creditors of partners with respect to the latter's property in the partnership is limited to their being able to attach and receive whatever may correspond to the debtor partner by way of *profit or liquidation.* [Italics by the author.] Any interpretation

---

[3] By Act No. 42 of 1930 (Sess. Laws, p. 320) the Legislature amended § 174—§ 137, 1932 ed.—eliminating the second paragraph relative to partnerships constituted by shares to which the author makes reference.

[4] III *Comentarios al Código de Comercio y Jurisprudencia Española* 274 (3d ed. 1945).

of this section must turn on a forced limit. The creditors of a partner may never have a greater right over the partnership interests than that corresponding to the debtor partner. Will the creditors be able to demand that the profits be liquidated? In fact, in the case of a partnership there are no profits or losses until its dissolution. However, according to mercantile practices the profits are liquidated semiannually, annually, or as provided in the articles of copartnership, and the system has become so generalized that there is a Code, like the German, which has recognized in § 122, taken from the former, the right of the partners to claim annual profits whenever such right is not exercised with evident detriment to the partnership. However, in our country a partner may not do so, and much less the creditors in order to secure payment of their credit."[5]

Concerning the liability of the partners with their private property for the partnership debts, Joaquín Garrigues points out as a distinct problem that of the liability of the partners' for their private debts, and says, following the doctrine, that the private creditors of a partner may not attach and sell the partner's share, "neither in the personal aspect—since the partner's position may not be substituted, § 143 [120, 1932 ed.], nor in the patrimonial aspect—since the partner's contribution is not his any longer and has passed to the patrimony of the partnership." "The creditor," he says, "must be satisfied with attaching the profits of his debtor and, in the event of liquidation, the part which may correspond to him in the division of the partnership capital."[6] Respecting the profits, Gay de Montellá says in *Código de Comercio Español*, vol. II, p. 350 *et seq.* (1936), that they do not form part of the stockholder's patrimony and are not attachable

---

[5] In disposing of this case we do not wish to advance any criterion on the latter considerations of the author regarding the manner in which the creditor of a partner may assert his right under § 137.

[6] I-1 *Tratado de Derecho Mercantil* 572 *et seq.* (1947).

until it is agreed to distribute them in the form of dividends, by reason of the right granted by § 174 to the creditors of the partner, and that until such time the stockholder's right to the profits or to the reserves set aside from the profits may not be individualized.

This Court has also made expressions. In *Quintana Bros. & Co.* v. *S. Ramírez & Co.*, 22 P.R.R. 707, decided in 1915, the private creditor of a partner attached certain merchandise of a partnership in an amount which it claimed was the value of the partner's partnership interest. In reversing the judgment which sustained the attachment, it was said that the partners have an interest in the partnership capital, but such interest follows the partnership's destiny and that only upon the dissolution or liquidation of the latter do the partners acquire individually, for themselves, whatever may correspond to them. It was also said that § 246 of the Code of Civil Procedure of 1904 had not repealed the existing provisions of § 174 (§ 137 of the 1932 ed.) of the Code of Commerce, and that the creditor of a partner of a commercial company had and has legal means of securing his credit with the interest of the partner in the capital of the firm, but that the law did not and does not authorize a creditor of a partner, for the purpose of securing his credit, to invade the sanctity of the partnership, point out himself the interest of the partner, remove property of the partnership equal in value to such interest and place it in the custody of a third person, thereby practically threatening the destruction of the life of the partnership.

■ Section 246 of the Code of Civil Procedure expressly subjected to a writ of execution of judgment "the shares and interest in any corporation or company," and declared that such shares or interest could be attached pursuant to a writ of execution. In *Quintana* we said that § 246 did not repeal or render ineffective the provisions of § 174, at present § 137, of the Code of Commerce. We may assert with greater cer-

tainty that that is the situation upon deciding this case, since § 246, which authorized the attachment of a partner's interest for the execution of a judgment, was repealed by Rule 72 of the Rules of Civil Procedure of 1958. See, also, in connection with the problem, *Banco Español de Puerto Rico et al.* v. *Bolívar et al.*, 7 P.R.R. 68, 87 (1904) ; *Puigdollers* v. *Monroig*, 14 P.R.R. 195, 215 *et seq.* (1908), regarding the profits already corresponding to a particular period of partnership operations; *Perales* v. *Sampayo*, 36 P.R.R. 808, 813 (1927), where it is repeated, applying strictly § 137, that the creditor of a partner shall not have, with respect to the partnership, any further right than that of attaching and collecting the amounts which may be due the debtor partner by reason of profits or liquidation. Also, *Fonalledas* v. *Dist. Court of San Juan*, 33 P.R.R. 31, 34 *et seq.* (1924).

■ The sale at public auction of the assets, rights, shares, interest, participation, and title of partner Abella Hernández in the firm Rafael Padilla y Co., as advertised in the edict, is not proper in the present case. The fact that the edict warns the purchaser that he may not substitute Abella in the discharge of his partnership function, according to § 120 of the Code of Commerce, assuming, without so deciding at this time, that that section governs in a forced assignment or by judicial command as it does in the case of a voluntary assignment, does not cure the situation nor renders permissible, against the prohibition of § 137, the public sale of his partnership share. Rather, such warning creates an anomaly in the edict itself, since anyone who possesses the partnership property or capital could not perform any function pertaining to a partner, not even for the defense of the capital against another's actions, and; on the contrary, there would be a person exercising the powers of a partner without retaining his status as such, upon losing the capital contributed by him.

■ We do not hold that plaintiffs may not attach and make their own, pursuant to § 137, any partnership profits which, individualized in accordance with mercantile uses and practices, may be identified as private property of partner Abella, or that they have no right to attach and make their own whatever may belong at the proper time to Abella by return of capital or for any other account. In the meantime, such capital or interest does not belong to him. His private creditors may not reach him at this time through the sale thereof at public auction.

The order on review of the trial court will be set aside and the public auction so far stayed will not be carried out.